IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| BRANDON R. BECK and DEANDRA K. BECK, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Civil Action No.: 02-PT-2760-E |
| ORKIN EXTERMINATING COMPANY, INC., et al., | )<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION

This cause comes on to be heard upon Defendant Orkin Exterminating Company, Inc.'s ("Orkin") Motion to Compel Arbitration, filed on December 2, 2002.

### FACTS AND PROCEDURAL HISTORY[1]

Plaintiffs Brandon Beck and Deandra Beck ("Plaintiffs") are residents of Calhoun County, Alabama. *See* Compl. at ¶ 1. Orkin is a "foreign"[2] corporation, conducting business in Calhoun County, Alabama. *Id.* at ¶ 2. In 2001, Orkin contacted Plaintiffs and advised them that persons in their area were having serious problems with external spiders at their residences. *Id.* at ¶ 5. Orkin then advised Plaintiffs that they should take advantage of the treatment and extermination services that it was offering. *Id.* Acting on these representations and advice, Plaintiffs contracted with Orkin to provide its services, especially the elimination of exterior spiders. *Id.* The written contract, executed on or around June 28, 2001, provided that Orkin

---

[1] For purposes of this Motion, the facts in the Complaint will be taken as true.

[2] Plaintiffs do not indicate which state's laws Orkin is organized under. In the Notice of Removal, Orkin states that its principal place of business is in Atlanta, Georgia. *See* Notice of Removal at ¶ 3. In its Brief, Orkin states that it is a Delaware corporation. *See* Def. Br. at 2.

would treat Plaintiffs' residence at least once every other month, and more often if deemed necessary by Orkin or requested by Plaintiffs. *Id.* at ¶ 6. On or about June 29, 2001, Orkin treated Plaintiffs' residence, specifically treating it for exterior spiders. *Id.* at ¶ 7. On or about October 5, 2001, Orkin again treated Plaintiffs' residence. *Id.* at ¶ 8. However, said treatment did not include a treatment for exterior spiders. *Id.* On or about November 18, 2001, Brandon Beck was bitten by a Black Widow spider while working in the flower bed in the front yard of Plaintiffs' residence. *Id.* at ¶ 9.

Plaintiffs filed this lawsuit in the Circuit Court of Calhoun County, Alabama, on October 4, 2002. The Complaint alleges (1) fraud, (2) negligence/wantonness, and (3) breach of contract. *Id.* at 2-4. Orkin removed the case to this court on November 12, 2002. This court's jurisdiction is based on the diversity of the Parties and the amount in controversy, pursuant to 28 U.S.C. § 1332. *See* Notice of Removal at 2-3. Orkin now seeks and order compelling all of Plaintiff's claims into mediation and arbitration.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") was designed "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Paladino v. Avnet Computer Techs., Inc.* 134 F.3d 1054, 1057 (11th Cir. 1998) (internal quotations and citations omitted). The FAA does not "require parties to arbitrate when they have not agreed to do so, ... nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement." *American Express Fin. Advisors, Inc. v. Makarewicz*, 122 F.3d 936, 940 (11th Cir.1997) (citations omitted). However,

"the FAA creates a presumption in favor of arbitrability; so, parties must clearly express their intent to exclude categories of claims from their arbitration agreement." *Paladino,* 134 F.3d at 1057. Nonetheless, "courts are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties." *Goldberg v. Bear, Stearns & Co.,* 912 F.2d 1418, 1419-20 (11th Cir.1990).

## ARGUMENTS

**I. Orkin's Position**

Orkin argues that the contract entered into by it and Plaintiffs contains an arbitration provision that applies to this case. Specifically, the contract provides that

> **ARBITRATION:** In the event of any dispute arising out of or relating to this agreement or the services performed under this agreement or tort based claims for personal or bodily injury or damages to real property, the parties first agree to participate in at least four (4) hours of mediation . . . before having recourse to arbitration. If the mediation procedure herein does not resolve any such dispute, the parties first agree that all disputes between the parties shall be finally resolved by arbitration . . . .

*See* Def. Ex. A. Orkin notes that in *Allied Bruce Terminix Co. v. Dobson*, 513 U.S. 265 (1995), the United States Supreme Court held that an arbitration clause in a pest control contract between the company and an Alabama homeowner was subject to arbitration.

Orkin also argues that this arbitration clause is enforceable in federal court, in that it involves interstate commerce. Orkin notes that it is a Delaware corporation with its principal place of business in Georgia, while Plaintiffs are resident of Alabama. *See* Def. Br. at Ex. B. Orkin's branch office that served Plaintiffs' home received the chemicals and equipment used from outside of Alabama. *Id.* Moreover, most of Orkin's personnel were trained in Georgia. *Id.* Given that both federal and Alabama law strongly favor arbitration, *see, e.g., Circuit City Stores,*

*Inc. v. Adams*, 121 S. Ct. 1302 (2001); *Karl Storz Endoscopy-America, Inc. v. Integrated Med. Sys.*, 808 So. 2d 999, 1008 (Ala. 2001), this court should enforce the arbitration clause in this case.

## II. Plaintiffs' Response

Plaintiffs argue that the underlying contract does not involve interstate commerce, and therefore is not enforceable under the FAA. Plaintiffs argue that *Dobson*, cited by Orkin, is distinguishable because the interstate nature of the contract in question was not contested. Here, Plaintiffs argue, while Orkin states that *practically* all of its equipment, chemicals, and training were obtained out-of-state, *see* Def. Br. at Ex. B, Orkin has not shown that the equipment or chemicals *actually used in fact* were obtained from outside of the state. Plaintiffs argue that Orkin should be required to prove the effect on interstate commerce with fact, not speculation. Moreover, Orkin has cited no case to suggest that the FAA is triggered simply because one party is a foreign or multi-state corporation. While the FAA is as broad as the Commerce Clause, Plaintiffs argue, it is still limited to those contracts that involve interstate commerce. *See, e.g., Perry v. Thomas*, 482 U.S. 483, 489 (1987). Alabama law is in accord. *See, e.g., Sisters of Visitation v. Cochran Plastering Co.*, 775 So. 2d 759 (Ala. 2000). Plaintiffs argue that Orkin should be required to point to specific facts establishing the contract's effect on interstate commerce.

Plaintiffs also argue that the FAA would not apply to the claims of Deandra Beck, because she was not a signatory to the contract. Plaintiffs note that under Alabama law, arbitration agreements are interpreted using the general standards of contract law. *See Cook's Pest Control, Inc. v. Boykin*, 807 So. 2d 524, 526 (Ala. 2001). Accordingly, a non-signatory

4

cannot be bound by an arbitration agreement. *See AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986). Here, Plaintiffs argue, it is undisputed that Deandra Beck did not sign the contract. *See* Def. Br. at Ex. A. Thus, she is not bound by the agreement, assuming it is otherwise enforceable.

### III. Orkin's Reply

Orkin attaches the affidavits of Barbara Peek, Purchasing Manager of Rollins Supply, Inc. ("RSI"), and Charles Bowen, Director of Fleet for Rollins Corporation. *See* Def. Reply Br. at Exs. A-B.[3] These affidavits are attached to show the effect that this contract has on interstate commerce. According to Orkin, these affidavits, along with the affidavit of Steve Drennan, attached to the initial brief, *see* Def. Br. at Ex. B, demonstrate, among other things, that: (1) Orkin does business in 49 states and the District of Columbia, (2) Orkin drafted the contract in Georgia and sent it to its local offices in Alabama, (3) the Alabama branch office in question purchased chemicals and equipment from RSI's facilities in Georgia, who in turn purchased them from companies in California and Texas, and (4) the Alabama branch office in question used vehicles that were leased from a company located in Georgia. *See* Def. Br., Ex. B at ¶¶ 4-5; Def. Reply Br., Ex. A at ¶¶ 3-6, Ex. B at ¶ 4. *See also* Def. Reply Br. at 2-4. Orkin argues that these facts clearly demonstrate an effect on interstate commerce.[4]

Orkin also argues that Deandra Beck should be bound by the arbitration agreement, even

---

[3] According to Orkin, both it and RSI are wholly-owned subsidiaries of Rollins, Inc. *See* Def. Reply Br., Ex. A at ¶¶ 1-2. RSI serves as the principal supplier of pesticides and equipment to Orkin. *Id.*

[4] Orkin cites *Dobson* for the proposition that parties do not have to contemplate that their contract will have an effect on interstate commerce for it to be enforceable under the FAA. 513 U.S. at 281. Finally, Orkin points out that the United States District Court for the Middle District of Alabama has specifically held that a pest control contract between Orkin and an Alabama resident involved interstate commerce. *See Rollins, Inc. v. Foster*, 991 F. Supp. 1426, 1430 (M.D. Ala. 1998).

5

though she did not sign it. While acknowledging the general rule that a party cannot be compelled to arbitrate absent an agreement to do so, Orkin argues that courts "have recognized a number of theories under which non-signatories may be bound by the arbitration agreements of others." *Employers Ins. of Wausau v. Bright Metal Specialities, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001). According to Orkin, "[t]hese theories arise out of common law principles of contract and agency law: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Id.* at 1322. Orkin argues that a further example would be a third-party beneficiary claiming the benefit of the contract. *See Georgia Power Co. v. Partin*, 727 So. 2d 2, 5 (Ala. 1998) ("The law is clear that a third party beneficiary is bound by the terms and conditions of the contract that it attempts to invoke. The beneficiary cannot accept the benefits and avoid the burdens or limitations of a contract.") (citations omitted). Thus, Orkin argues, if Deandra Beck attempts to obtain the benefits of the contract, which all of her claims do, then she must submit them to arbitration.

## CONCLUSIONS OF THE COURT

The court agrees that the contract in question involves interstate commerce. Further, the court finds that Deandra Beck is subject to the arbitration clause as a third-party beneficiary if any duty was owed to her. The Defendant will submit a proposed order within ten (10) days.

This \_\_19th\_\_ day of January, 2003.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE